## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Prather, being first duly sworn, hereby depose and state as follows:

## I. Introduction And Agent Experience

1. I submit this affidavit to establish probable cause to believe that in or about August 2023, in the District of Vermont, William Roy and Addyson Morgan knowingly and willfully conspired together and with others to distribute cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), 846.

2. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by ATF since 2001, my first two years as an Inspector and subsequently as a Special Agent. I have a Bachelor of Arts degree in Criminal Justice and have completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia. I have received specialized training in firearms identification and the investigation of firearms-related offenses. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts. I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs. As such, I have coordinated the controlled purchases of illegal firearms and narcotics utilizing confidential sources, cooperating witnesses and undercover law enforcement officers; written, obtained and coordinated the execution of search and arrest

1

warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of firearms and illegal drugs; provided testimony, both in Grand Jury proceedings and District Court proceedings; and spoke with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal firearms and drugs. In addition, I have been involved in the investigation of street gangs, including gangs with a national presence as well as locally based gangs. I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

3.     Based on my training, personal experience, participation in said criminal investigations, and the collective experience of other law enforcement officers that I work with, I have become familiar with the methods and techniques used by individuals engaged in firearms and narcotics trafficking. I have become knowledgeable of the methods and modes of narcotics operations, and the language and patterns of drug abuse and trafficking. I have gained knowledge in the use of various investigative techniques including physical and electronic surveillance, confidential informants and cooperating witnesses, the controlled purchases of illegal narcotics, consensually monitored recordings, interviews, and service of legal process including subpoenas and search warrants. I have worked directly with confidential informants to conduct controlled purchases of controlled substances, and I have become familiar with the ways that controlled substances are transported, stored, and distributed. During these investigations, I have listened to and reviewed numerous communications between individuals involved in or suspected to be involved in the distribution of controlled substances. As a result of these investigations, I also have experience in debriefing defendants, informants, participants, and various persons directly

2

involved in buying and distributing controlled substances, and I have become familiar with the language and terminology used by those persons, the prices of controlled substances and the packaging used to distribute these substances in this region, and the organizational structure of enterprises that traffic in controlled substances.

## II.    Sources of Information

4.     The facts set forth in this affidavit are based on my personal observations and knowledge and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation.  Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested criminal complaint. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

## III.   Probable Cause

5.     In August 2023, investigators with the Vermont State Police and the ATF Hartford Field Office were investigating drug distribution activities that were occurring out of 84 Linden Street, First Floor, in Brattleboro, VT.  During this time, Confidential Informants (CIs) operating at the direction of the Southern Vermont Drug Task Force conducted controlled purchases of crack cocaine. On each occasion, the CIs were searched prior to and at the conclusion of the transaction; each purchase was made with recorded/documented funds; the buys were audio/video recorded; and all of the substances purchased tested positive with a presumptive test for a controlled

substance. I am not aware of any occasion in which the CI had a sum of money or controlled substance that was inconsistent with the controlled buy they were participating in.

6. Prior to the controlled buys, the CIs identified the drug distributors at 84 Linden Street as "Louis," "X," "Will," and "Addy." From my participation in this case and my work in the Hartford, CT area, I am aware that Elias Lopez is from the Hartford, CT area and has used the name Louis; Jayden Rios is from the Hartford, CT area and has used the name X; and that Will and Addy are William Roy and Addyson Morgan, both from the Brattleboro area. The CIs were shown photographs of Elias Lopez, Jayden Rios, William Roy and Addyson Morgan, and the CIs positively identified those photographs as the people they knew as Louis, X, Will and Addy.

7. According to the CIs, Louis and X would employ one or two individuals from the Brattleboro area to "work the door." In this case, that was Will and Addy. Will and Addy would answer the door to a prospective customer, determine what they wanted to purchase and then pass this information on to the distributor. Either Will or Addy would then secure the narcotics from Louis and/or X and provide the drugs to the customer or to the customer through the local intermediary. The CIs also indicated that Louis and X always had a firearm in their possession or somewhere in their immediate vicinity.

8. During the week of August 6, 2023, a VT State Police Confidential Informant (VTSP CI),[1] under the direction of the Southern Vermont Drug Task Force, traveled to the first-floor apartment of 84 Linden Street in Brattleboro. The CI knocked on the door of the first-floor apartment and was let into the residence by a person identified by the CI as Addyson Morgan. The CI walked into the kitchen area of the residence where the CI met with an individual that the

---

[1] The VTSP CI has one charge for marijuana possession that was reduced to a violation. They have no other convictions and they are assisting the Drug Task Force in exchange for payment. The CI has a history of using controlled substances, but to my knowledge, they were not using controlled substances while assisting in the controlled buys in this case.

CI later positively identified as Jayden Rios (Rios is a minor). The CI asked Rios to purchase a "ball." Rios retrieved suspected crack cocaine from a bag, weighed it on a scale and provided it to the CI in exchange for marked/controlled funds.

9. While this transaction was occurring, investigators could observe, through the video transmitter, what appeared to be the outline of a firearm in Rios's front left sweatpants pocket. The CI later told investigators that during the buy, Rios appeared to have a small caliber pistol in his pocket.

10. On the week of August 13, 2023, ATF CI 31625, under the direction of the South Vermont Drug Task Force, traveled to the first-floor apartment at 84 Linden Street.[2] The CI entered the residence and met with Jayden Rios (who the CI had previously identified as Rios) in the kitchen area where the CI purchased suspected crack cocaine in exchange for marked/controlled funds. Will Roy and Addyson Morgan were both present for the transaction, as were several other customers waiting to purchase narcotics.

11. On August 17, 2023, at approximately 0600 hours, Special Agents from ATF and members of the Vermont State Police traveled to the first floor of 84 Linden Street in Brattleboro, VT to execute a search warrant for the first floor of the residence. Upon arrival to the residence, ATF Special Agents approached the front, side door of the residence, knocked and announced their presence. They then made entry into the residence where they encountered Addyson Morgan, William Roy and the renter/lessee of the property, Michael White. Each individual was removed from the residence and secured for officer safety.

---

[2] ATF CI 31625 has a 2010 conviction for credit card misuse and larceny; a 2013 conviction for receiving stolen property and fraud; and a 2014 conviction for shoplifting. They have no other convictions and they are assisting ATF and the Drug Task Force in exchange for payment. The CI has a history of using controlled substances, but to my knowledge, they were not using controlled substances while assisting in the controlled buys in this case.

12. As Special Agents were making entry in the front of the residence, Troopers with the Vermont State Police were maintaining a rear perimeter on the far side of a fence located at the rear of the residence. As they were establishing their perimeter they encountered Jayden Rios, who they knew was associated 84 Linden Street, fleeing the location. VSP secured Rios for officer safety at that time. At approximately the same time, Special Agents who were maintaining a perimeter on the right side of the house observed an individual who appeared to be sitting on a set of stairs located at the back right corner of the residence. They approached the individual, identified him as Elias Lopez from the Hartford, CT area, and secured him for officer safety. Special Agents searched Lopez's person and found a sum of currency on his person as well as two master lock keys.

13. As ATF Special Agents conducted a sweep of the residence, they observed two monitors and a tablet, all located in the only bedroom in the apartment. The devices appeared to be connected to cameras surveilling the outside of the residence. When agents entered the room, the devices were projecting a live feed of the front and side of the house. This live feed would enable someone to see, in real time, what was occurring outside the house.

14. Investigators continued to the basement, which is only accessible from the interior of the first floor and from a door that exits into the backyard, to conduct a protective sweep. As investigators were conducting their sweep, they observed a tan firearm with a grey/black extended magazine sitting against a small blue bag. There was also a black drawstring bag. These items appear to have been thrown at the basement wall and were located near the rear exit door. In the following picture, the tan firearm with the extended magazine and the small blue bag can be seen in the middle of the picture, and the black drawstring bag can be seen in the wooden box on the lower right portion of the picture :



15. After the location was secured, Special Agents conducted a closer review of the items and determined that the drawstring bag contained a sum of U.S. Currency and that the small blue bag was a locked banker's bag. Investigators were able to unlock the banker's bag with the keys found on Lopez's person. Inside the bag was an additional sum of U.S. Currency along with a bag containing approximately 29.4 grams of suspected crack cocaine, with packaging.[3] Investigators also located plastic bag, containing a smaller sum of suspected crack

---

[3] The money seized from the banker's bag and drawstring bag has not been formally counted yet. However, there are bands of currency in the banker's bag suggesting the amount in the bag totals somewhere between $8000-10,000. The drawstring bag contains a large amount of loose currency and investigators believe there may be another couple thousand dollars in that bag.

cocaine, in the vicinity of these items. The crack in this bag weighed approximately 6.7 grams with packaging. The substances in both bags tested presumptive positive for cocaine. The tan firearm was determined to by a Glock, Model 19x, 9mm pistol, bearing S/N BWZH722.

16.     On this same date, I read Michael White his *Miranda* rights, which he agreed to waive. White stated that he had been a tenant at 84 Linden Street on and off for approximately two years. White had signed a formal lease agreement for the location approximately two years prior and had only been away from the residence when he was obtaining treatment for substance abuse. Approximately one month prior, White had let his friends, Morgan and Roy, move into the residence for a place to stay. At the same time Morgan and Roy arrived to stay, two individuals he knew only as Savage and Joey also moved in. Savage and Joey stayed in the only bedroom in the apartment, while White stayed on the couch and Morgan and Roy stayed on a blow-up mattress. White described Savage as the young Hispanic male with glasses, who was outside the residence. This person was identified as Rios. White stated that Joey was the other male. This person been identified as Lopez.

17.     I asked White how the drug distribution worked from the residence. White stated that someone would answer the door when a customer arrived. White stated that he would occasionally answer the door but that usually Roy or Morgan would answer the door and ask the customers what they wanted. White stated that Roy or Morgan would then tell Savage (Rios) or Joey (Lopez) what the customer wanted. Savage or Joey would then weigh the drugs on a scale in their bedroom and then provide it to the customer or provide it to Roy or Morgan to provide to the customer. White stated that he believed that they met with 20 to 30 customers a day.

18.     White stated that both Savage and Joey were at his residence regularly for the prior month. White stated that he did not believe either individual had left the residence for more than a day or two in the prior month.

19.     White stated that he used both heroin and crack cocaine and that Savage and Joey had both provided him heroin and crack cocaine on a regular basis in exchange for allowing them to stay at the residence. White stated that Savage (Rios) had provided him both heroin and crack cocaine at least 10–20 times in the last month. White sated that Joey (Lopez) had also provided him with heroin and crack cocaine at least 10–20 times in the prior month.

20.     I then asked White if he had seen Savage (Rios) or Joey (Lopez) with a gun. White stated that he had seen each of them with a gun at various times. White stated that they would wear it in their waistband. I showed White a photo of the gun recovered from the basement and White stated had seen both Savage and Joey in possession of the gun.

21.     On that same date, investigators with the Vermont State Police spoke to William Roy. Roy was read his *Miranda* rights, which he agreed to waive. Roy told investigators that he and his girlfriend, Morgan, assisted Savage and Joey in their drug distribution efforts at 84 Linden Street. Roy told investigators that he and/or Morgan would take orders from prospective customers when they arrived at the door and that they would tell Savage and/or Joey what the customer had ordered. Roy stated that Savage and/or Joey would then provide the drugs to the customer and/or to Roy or Morgan so that they could give it to the customer. Roy stated that he had seen both Savage and Joey holding firearms. Roy was shown a photo of the gun recovered from the basement and Roy stated that he had seen both Savage and Joey in possession of that particular firearm.

22.     It is my belief, based on my training an experience, as well as my view of the scene at 84 Linden Street and the location of the recovered evidence, is that Rios and Lopez were awake in their bedroom as law enforcement approached the residence. Further, it is my belief that one or both individuals were able to see law enforcement approaching from the exterior cameras being viewed from their bedroom and they then attempted to flee through the basement

with the firearm, narcotics and currency. Finally, it is my belief that one or both of the individuals discarded the recovered evidence before they attempted to flee through the rear basement door.

## IV.   Conclusion

23.   Based upon the information above, probable cause exists to believe that William Roy and Addyson Morgan knowingly and willfully conspired together and with others to distribute cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), 846.

*Attested To By Reliable Electronic Means*
DANIEL PRATHER
ATF Special Agent

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 on August 17, 2023.

KEVIN J. DOYLE
U.S. Magistrate Judge